ROSELAND, INC.
Interventora-Recurrente

v.

JUNTA DE PLANIFICACION
Recurrida

Núm. KLRA-98-00640

MUNICIPIO DE SAN JUAN
Recurrente

v.

JUNTA DE PLANIFICACION
Recurrida

Núm. KLRA-98-00643

San Juan, Puerto Rico, a 17 de marzo de 1999

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Aponte Jiménez y Giménez Muñoz

Alfonso de Cumpiano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Roseland, Inc. y el Municipio de San Juan presentaron recursos independientes, los que, consolidamos, para que revisemos la resolución de la Junta de Planificación (la Junta) en aprobación de una consulta de ubicación de un proyecto comercial en el área de Hato Rey. ■ Ambas partes recúrrentes señalan como error de la Junta la aprobación de la consulta a base de evidencia que no estuvo disponible a éstas o no formó parte del expediente del caso. Roseland, Inc. cuestiona, además, la comparecencia de una persona que no es abogado en representación de la corporación proponente y la falta de determinaciones de hechos en la resolución recurrida.

Luego de considerar las posiciones de las partes, la resolución de la Junta, los documentos sometidos del expediente administrativo relevantes a la controversia y el derecho aplicable, expedimos el recurso y revocamos la resolución recurrida. A continuación exponemos los fundamentos de nuestra decisión.

### I

Según consta en la resolución recurrida y en el expediente, Mora Development Corp., por conducto de Servicios Técnicos Homel, Inc. presentó en enero de 1998 consulta de ubicación ante la Junta en torno a un proyecto comercial de tres edificios a ser ubicados en una finca de 6.22 cuerdas. El pietaje total del proyecto es de 69,775 pies cuadrados. Los terrenos ubican en la intersección de la avenida Jesús T. Piñero con la calle César González en Hato Rey, dentro de un distrito R-5 (residencial), según el mapa de zonificación de San Juan. Anteriormente se habían denegado dos consultas para la radicación de proyectos en ese mismo lugar. Uno de ellos trataba sobre el establecimiento de una Universidad de la Fundación Ana G. Méndez y otro, para ubicar las oficinas centrales del Fondo del Seguro del Estado.

El 11 de febrero de 1998 la Junta acordó dejar en suspenso la consulta para recibir comentarios de las agencias. EL 26 de febrero emitió aviso de vista pública para el 16 de marzo, que se publicó en el periódico El Vocero. El aviso indicó como asuntos a discutirse la propuesta ubicación del proyecto comercial y la propuesta de reclasificación de los terrenos de un distrito R-5 (residencial) a un distrito C-2 (comercial). ■ Indicó, entre otros asuntos, que el proponente informaría sobre los accesos vehiculares al proyecto y el impacto del tránsito que pudiera generar el proyecto sobre las vías existentes en el sector. Se invitó a los vecinos colindantes del proyecto para asistir a la vista y someter sus recomendaciones.

Previo a la celebración de la vista, la Autoridad de Acueductos y Alcantarillados y la Autoridad de Energía Eléctrica enviaron comunicaciones a la Junta en las cuales no presentaron objeciones al proyecto e indicaron sus requerimientos. El Departamento de Recursos Naturales no presentó objeción a la etapa de ubicación del proyecto pero indicó señalamientos específicos, entre éstos, que se debería cumplir con el Reglamento Núm. 13 de Planificación sobre Zonas Susceptibles de Inundación, debido a que parte del proyecto ubica en zona de tal naturaleza.

En carta de 6 de marzo de 1998 la Autoridad de Carreteras y Transportación (Autoridad de Carreteras) indicó a la Junta que dada la magnitud del proyecto, se requería la preparación de un estudio en donde se evalúen las condiciones de tránsito existentes en el presente y el futuro del sector y se determine el impacto que el mismo tendrá en el sistema vial que le sirve de acceso. Requirió se le sometiera el estudio y cuatro copias de los planos corregidos. Especificó que la comunicación no constituia una autorización para construir, siendo necesario que se cumplieran con los requisitos expuestos en ésta. (Anejo 14 del recurso Núm. KLRA-98-00640, pág. 50). En comunicación de 17 de marzo, en respuesta a la notificación de vista, la Autoridad de Carreteras informó a la Junta que reiteraba sus comentarios del 6 de marzo, respecto al proyecto. (Anejo 21 del recurso Núm. KLRA-98-00643, pág. 105). Con fecha de 14 de mayo, consta en el expediente comunicación de la Autoridad de Carreteras dirigida al Ing. Cleofé Rubí, en respuesta a la suya de 27 de abril, en la que se hace referencia al *"esquema*

*sometido para el proyecto."* En ésta se le hacen comentarios, recomendaciones y requerimientos respecto al tránsito, incluyendo el requerimiento de una aportación de $570,000.00 para las mejoras necesarias en la infraestructura. (Anejo 15 del recurso Núm. KLRA-98-00640, pág. 52).

La Junta de Calidad Ambiental, en carta de 15 de abril, recibida en la Junta el 15 de mayo de 1998, indicó a ésta que se cumplió con la fase de evaluar el impacto ambiental e incluyó recomendaciones. El 12 de marzo de 1998, la Asociación de Residentes de Baldrich solicitó intervención en los procedimientos que se estaban llevando a cabo ante la Junta y solicitó, además, suspensión de la vista señalada para el 16 de marzo de 1998. Similar solicitud hicieron el Municipio de San Juan, la Junta de Directores del Condominio Parque de Loyola y la Junta de la Comunidad Núm. 4, Hato Rey-Puerto Nuevo.

El 16 de marzo de 1998 se celebró la vista pública. La oficial examinadora designada a presidir ésta le concedió a los opositores del proyecto el término de diez (10) días para presentar sus argumentos por escrito. En escrito de 16 de abril, Roseland, Inc., propietaria de terrenos colindantes con los del proyecto, solicitó intervención.

Luego de que le fueran requeridos comentarios sobre el proyecto, el Municipio envió comunicación el 27 de marzo de 1998 a la Junta indicándole que no contaba con los elementos de juicio necesarios para evaluar adecuadamente la consulta y la rezonificación, siendo necesario un estudio de tránsito detallado y una evaluación del impacto del proyecto propuesto, del efecto acumulativo de éste y de todos los desarrollos efectuados recientemente y propuestos para el sector.

En reunión de 16 de abril de 1998, la Junta aceptó como interventores a la Asociación de Residentes de Baldrich y a Roseland, Inc., y dejó en suspenso la consulta por un término de treinta (30) días para que el proponente sometiera comentarios en relación a las comunicaciones de la Autoridad de Carreteras y del Municipio de San Juan. Advirtió, además, que las partes debían notificarse mutuamente toda comunicación presentada ante la Junta en relación al caso, mediante certificación. Dicha resolución fue notificada el 14 de mayo de 1998. (Anejo 13 del recurso Núm. KLRA-98-00640, pág. 49).

El 15 de mayo de 1998, el proponente envió comunicación a la Junta en la que hizo alusión a los planteamientos de la Autoridad de Carreteras y del Municipio de San Juan sobre el estudio de tránsito y a los señalamientos de este último sobre los aspectos socio-económicos. Señaló que en la vista del 16 de marzo había dejado aclarado que con la conversión a expreso de la avenida Piñero y la reubicación de la avenida César González, las condiciones de tránsito en el área han mejorado sustancialmente. Señaló que entendía que los estudios de tránsito para la conversión a expreso de la avenida Piñero consideran el desarrollo futuro en el área y que según el documento ambiental preparado para el proyecto de esa conversión, el diseño del expreso Piñero proveería capacidad necesaria para absorber las cantidades de vehículos actuales y futuros. Indicó que en su carta del día anterior, 14 de mayo, la Autoridad de Carreteras le confirmó la razón. (Anejo 16B del recurso Núm. KLRA-98-00640, págs. 58-60).

La consulta fue aprobada mediante resolución de 10 de julio de 1998. Tanto Roseland, Inc., la Asociación de Residentes de Hato Rey Oeste, la Asociación de Residentes de Baldrich y el Condominio Parque de las Fuentes presentaron reconsideración ante la Junta, bajo diversos planteamientos. Alegaron, en síntesis, falta de notificación adecuada, falta de evidencia sustancial para sustentar la resolución emitida, consideración de evidencia presentada con posterioridad a la vista sin dar oportunidad a los opositores a refutarla y omisión en considerar proyectos denegados anteriormente. En resolución de 28 de agosto, la Junta reafirmó su decisión sobre la aprobación de la consulta.

Roseland, Inc. y el Municipio de San Juan acudieron a este Tribunal en los recursos de revisión que consideramos.

En resolución de 29 de enero de 1999 denegamos las solicitudes de desestimación presentadas por la Junta y por Mora Development Corp. Estas cuestionaron la legitimación activa de los recurrentes para incoar los recursos, lo que rechazamos en dicha resolución. Posteriormente, solicitamos a la Junta que se expresa en torno a la información suministrada por Mora Development Corp. en cuanto a que había presentado una enmienda a la Junta relacionada con el proyecto bajo revisión judicial. Mediante la enmienda se solicitó que el uso de dos de los tres solares comerciales autorizados por la Junta fuese variado a institucional. Interesábamos conocer el efecto de la solicitud de enmienda en los planteamientos del recurso, con el propósito de evitar el empleo de recursos judiciales innecesarios, de aprobarse dicha enmienda y variar la naturaleza del proyecto. La Junta nos informó que paralizaría la consideración de la enmienda, hasta que resolviéramos los recursos. Procedemos a resolver.

## II

Las normas de revisión de las determinaciones administrativas son bien conocidas. Reconocen deferencia judicial a dichas determinaciones a base de la especialización de las agencias que las emiten, sin que ello obligue a rendir o soslayar la función revisora de los tribunales. Al ejercer esa función nos corresponde determinar si la agencia actuó de manera arbitraria, ilegal, o en abuso de su discreción.

También debemos corroborar que las decisiones administrativas estén basadas en evidencia sustancial que obra en el expediente administrativo o determinar si están huérfanas de prueba sustancial en la totalidad del récord. Respecto a las conclusiones de derecho, éstas serán revisables en todos sus aspectos. *Misión Industrial de P.R. v. Junta de Planificación, et als,* ___ D.P.R. ___ (1997), **97 J.T.S. 43,** pág. 719; Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 180 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175.

La Junta de Planificación es la entidad creada por ley con el objetivo principal de guiar el desarrollo integral y balanceado de Puerto Rico. La ley que creó el organismo le confirió amplios poderes para clasificar y designar los terrenos en zonas y distritos y para establecer las normas que respondan a los propósitos de su creación. Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. secs. 62 y ss.

Los procedimientos que se llevan a cabo ante la Junta están regidos por su ley habilitadora, sus reglamentos y por la L.P.A.U., ya que la Junta no es de las agencias expresamente exceptuadas en dicha ley. (Sección 1.4, 3 L.P.R.A. sec. 2103). Ciertas disposiciones de la referida ley son relevantes a lo aquí cuestionado.

La L.P.A.U. requiere que en todo procedimiento adjudicativo ante una agencia se salvaguarden los derechos de notificación oportuna, de presentar evidencia, de una adjudicación imparcial y de que la decisión sea basada en el expediente. Sección 3.1, 3 L.P.R.A. sec. 2151. El funcionario que presida la vista ofrecerá a todas las partes oportunidad de responder, presentar evidencia, y argumentar, contrainterrogar y someter evidencia en refutación. Sección 3.13, 3 L.P.R.A. sec. 2163. Las resoluciones finales deberán incluir y exponer separadamente determinaciones de hechos y conclusiones de derecho que fundamenten la adjudicación y la disponibilidad del recurso de reconsideración o revisión. Sección 3.14, 3 L.P.R.A. sec. 2164.

La revisión judicial de las actuaciones de la Junta de Planificación se da no sólo en las adjudicativas, sino también en las actuaciones cuasi legislativas, incluyendo las relativas a zonificación y rezonificación. Aunque se reconoce que la Junta posee amplio margen de discreción para implantar la política pública sobre zonificación, y sus actuaciones gozan de presunción de validez y regularidad, compete a los tribunales, en última instancia,

examinar la validez jurídica de la actuación administrativa. *Asociación de Residentes de Park Side, Inc. v. Junta de Planificación,* ___ D.P.R. ___ (1998); **98 J.T.S. 156,** pág. 375.

### III

Conviene examinemos someramente, en primer término, la naturaleza del proyecto autorizado en la resolución recurrida. Se trata de una consulta de ubicación, mediante la cual la Junta autoriza el uso particular de un terreno. El procedimiento está regulado en la Ley Núm. 75, *supra*, 23 L.P.R.A. secs. 62-63j; el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Núm. 5244 de 21 de marzo de 1995 (Reglamento Adjudicativo). Además, la consulta de ubicación incluye los proyectos de desarrollos externos, a considerarse bajo las disposiciones del Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de 16 de septiembre de 1992 (Reglamento de Zonificación).

La resolución recurrida determinó que el proyecto bajo consideración constituye un desarrollo comercial extenso. Según el Reglamento de Zonificación se considera extenso el desarrollo de facilidades comerciales, industriales, institucionales o recreativas que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados. La determinación que se tome sobre un proyecto de desarrollo extenso descansará en la evaluación de factores que presente y demuestre la parte interesada en el caso, basadas en, y sin limitarse a los siguientes factores: (1) conformidad del uso propuesto y su intensidad con el Plan de Usos de Terrenos; (2) disponibilidad, programación y mejoras propuestas por el proyecto a la infraestructura del sector en que ubica; (3) la forma en que el proyecto propicia el desarrollo integral del sector y mantiene o mejora las condiciones existentes; y (4) la viabilidad, adecuacidad y conveniencia del uso propuesto. Sección 95.03 del Reglamento de Zonificación.

El Reglamento Adjudicativo dispone también factores a tomar en consideración por la Junta al evaluar y tramitar las solicitudes de consulta, entre otros, la localización específica del Proyecto, usos existentes en el lugar, situación de la infraestructura física y social del lugar que incluyen calles, alcantarillado, energía eléctrica y transportación. Sección 7.01 del Reglamento Adjudicativo.

De manera más específica, la Junta evaluará un proyecto de desarrollo comercial extenso o mixto a base de los siguientes criterios, establecidos en los siguientes incisos de la sección 97.03 del Reglamento de Zonificación que, en resumen, disponen:

*"1. La cabida del predio, que deberá exceder el máximo permitido como cambio de zonificación y proveerá el estacionamiento requerido.*

*2. El proyecto estará conforme las recomendaciones del Plan de Usos de Terrenos.*

*3. Si la infraestructura necesaria para atender las necesidades del proyecto y mitigar sus efectos está disponible o puede proveerse.*

*4. Celebración de vista pública con notificación a los dueños de las propiedades.*

*5. Cuando se combinen usos comerciales y residenciales en una misma estructura, los accesos de estacionamiento y aceras serán separados. Cuando se trate de usos comerciales para ventas al detal, el proponente proveerá información para determinar el efecto de la aprobación en el ofrecimiento comercial del área de mercado."*

Es evidente que la resolución en aprobación de un proyecto debe reflejar el cumplimiento de los factores y

criterios que guían el proceso evaluativo de la Junta. La evidencia en que se basa la resolución debe estar disponible para la vista, o darse oportuna notificación de ésta a las partes interesadas, de forma que puedan ejercer su derecho a refutarla. Además de lo dispuesto en la L.P.A.U. en torno a lo anterior, el Reglamento Adjudicativo, en su Sección 8.15, dispone que el oficial examinador podrá conceder término para someter escritos y otros documentos con posterioridad a la vista y darle oportunidad de réplica a las demás partes. La parte que somete los escritos posteriores, deberá notificar a las demás partes. De no ser éstas notificadas, los escritos no se considerarán por la Junta para la determinación que ésta tome en el caso.

Con ese trasfondo legal, veamos los planteamientos específicos traídos a nuestra atención.

## IV

De entrada disponemos que no tiene razón Roseland, Inc. en cuanto a su señalamiento de que la Junta permitió a una persona no abogada, abogar por una corporación en el proceso administrativo. Según informa la Junta, el Sr. José Melgarejo Rodríguez fue autorizado a comparecer a la vista como el proponente de la consulta. Ello está contemplado por la sección 3.01 del Reglamento Adjudicativo, que establece que en los proyectos privados las consultas podrán ser sometidas por el dueño de los terrenos o su representante autorizado. Las partes, incluyendo las corporaciones públicas, pueden comparecer a las vistas representadas por abogados, pero no están obligadas a comparecer así representadas. Sección 3.9 de la L.P.A.U., 3 L.P.R.A. sec. 2159i, sección 8.01 del Reglamento Adjudicativo. Nada hay en las alegaciones ni en el expediente que controvierta la aseveración de la Junta de que el señor Melgarejo Rodríguez acudió a la vista en sustitución de y por autorización del proponente para explicar la consulta.

Consideramos de importancia los errores respecto a la consideración de evidencia traída con posterioridad a la vista y su inclusión en la resolución recurrida. Nos referimos, en primer lugar, al impacto del proyecto en el tránsito, lo que está íntimamente relacionado con el criterio en torno a la infraestructura requerida para las necesidades del proyecto y para mitigar sus efectos. Al momento de celebrarse la vista pública, el 16 de marzo, existía el requerimiento de la Autoridad de Carreteras al proponente sobre un estudio de tránsito. El aviso de invitación a dicha vista específicamente indicaba que en la exposición del caso el proponente informará sobre los accesos vehiculares al proyecto y el impacto del tránsito que pueda generar el proyecto sobre las vías existentes en el sector. En su resolución de 16 de abril, notificada el 14 de mayo de 1998, la Junta dejó en suspenso la consulta por treinta (30) días, entre otras razones, para que el proponente sometiera comentarios respecto a las comunicaciones de la Autoridad de Carreteras y del Municipio de San Juan. Reconoció la Junta en esa comunicación que éstos solicitaron la preparación de un estudio de tránsito.

No obstante, en la resolución recurrida de 10 de julio de 1998 la Junta incorporó el contenido de la comunicación de la Autoridad de Carreteras de 14 de mayo de 1998 dirigida al Ing. Cleofé Rubí que contiene diversas recomendaciones sobre el tránsito, pero no hace referencia alguna al estudio de tránsito previamente requerido. De esta comunicación no surge notificación a las partes opositoras.

Además de lo anterior, la comunicación de la Autoridad de Carreteras contiene señalamientos en cuanto a que el acceso no provee la acumulación adecuada, conflictos de tránsito, requerimiento de ilustración de condiciones existentes en intersección, rediseño de semáforos, conjuntamente con el requerimiento de una aportación monetaria para las mejoras necesarias en la infraestructura vial del área.

El 15 de mayo, en respuesta al señalamiento sobre el requisito del estudio de tránsito y los aspectos ambientales, el proponente envió comunicación a la Junta de Planificación en la cual hizo referencia a la comunicación de la Autoridad de Carreteras de 14 de mayo, y respecto a los planteamientos del Municipio de San Juan, informó que las interrogantes sobre el tránsito las había aclarado el día de la vista. ▉ Como

previamente señalado, su contención fue a los efectos de que entendía que los estudios de conversión de la avenida Piñero en expreso, consideraron el desarrollo futuro en el área y que según el documento ambiental para ese proyecto de conversión, el diseño del expreso proveerá capacidad para absorber los vehículos actuales y futuros.

Conviene aquí señalar que las justificaciones sobre el tránsito en que se ampara el proponente para contestar el requerimiento de estudio, están contenidas en el Memorial Explicativo del proyecto que sometió a la Junta el 18 de enero de 1999. Es de suponer que esas justificaciones no fueron suficientes, sino hasta el nuevo enfoque de la Autoridad de Carreteras, en su comunicación del 14 de mayo. No obstante, la Junta, en su escrito de oposición ante este Tribunal, hace suyas las justificaciones del proponente en cuanto a que los estudios para la conversión de avenida en expreso Piñero, consideraron los proyectos futuros. No nos indica si esos documentos pasados estuvieron disponibles en el expediente y fueron notificados a las partes opositoras. Es razonable entender que éstas confiaron que se efectuaría el estudio requerido inicialmente por la Autoridad de Carreteras para este proyecto, lo que presumiblemente atendería sus preocupaciones.

Ciertamente la Junta erró al dar por contestadas las interrogantes sobre el tránsito, mediante la incorporación en la resolución de la comunicación dirigida al ingeniero Rubí. Esta fue sometida con posterioridad a la vista, presenta una situación diferente al estudio que se requirió al proponente, y contiene observaciones que ameritan aclaración en cuanto al impacto en el tránsito del proyecto. La falta de notificación y de oportunidad de refutar al Municipio de San Juan, el cual específicamente planteó su preocupación por el impacto en el tránsito y coincidió con el requerimiento inicial de la Autoridad de Carreteras de un estudio al respecto, es una violación al debido proceso de ley.

El principio de que el proceso es viciado si una parte desconoce la evidencia que se ha utilizado para adjudicar sus planteamientos está bien reconocido en nuestro ordenamiento jurídico. El caso de *López v. Junta de Planificación*, 80 D.P.R. 646 (1958), reiteró lo que ya formaba parte de nuestra jurisprudencia. En ese caso, el Tribunal Supremo dictaminó que el derecho a vista ante la Junta de Planificación no tendría sentido si se le permitiera fundar su decisión en evidencia recibida fuera de la audiencia sin el conocimiento de las partes interesadas y sin dar a éstas la oportunidad de rebatirla y explicarla mediante la repregunta o la presentación de otra evidencia en contrario.

Más recientemente, en *López Santos v. Asociación de Taxis de Cayey,* **96 J.T.S. 161**, pág. 398, 142 D.P.R. ___ (1996), el Tribunal Supremo anuló una resolución de la Comisión de Servicio Público que consideró prueba que no constaba en el expediente administrativo. Como fundamentos de esa decisión señaló que si a una parte no se le concede oportunidad de examinar evidencia utilizada en su contra, esto es, oportunidad de confrontarse con ésta y de responder, se le violan las garantías fundamentales.

En el presente caso, la ausencia de notificación al Municipio de San Juan en torno a los señalamientos de la Autoridad de Carreteras sobre el tránsito considerados por la Junta luego de la vista y la falta de oportunidad de refutar tanto dichos señalamientos como la posición del proponente sobre los estudios anteriores, violan también garantías fundamentales.

Como reconoce la Junta ante este Tribunal, su actuación en respuesta a una consulta de ubicación presentada ante su consideración es una actuación en su función adjudicativa. *Montalvo v. Municipio de Sabana Grande*, **95 J.T.S. 50**, pág. 890, 138 D.P.R. ___ (1995). A ésta aplican las garantías que conforman el debido proceso de ley, disponible a todas las partes afectadas. Los opositores, incluyendo al Municipio de San Juan, son partes afectadas por la decisión recurrida, como se deduce de sus planteamientos ante la agencia y ante este foro y como dictaminamos en previa resolución.

Relacionado también con la utilización de evidencia con posterioridad a la vista, está el señalamiento de Roseland, Inc. de que no fue notificada del documento ambiental a que se refiere la resolución recurrida. En la comunicación de la Junta de Calidad Ambiental de 15 de abril de 1998, emitida y recibida en la vista con posterioridad a ésta, no aparece notificación a las partes opositoras. (Anejo 21 del recurso Núm. KLRA-98-00640, págs. 86-88).

En definitiva, la Junta erró al considerar evidencia con posterioridad a la vista que no fue notificada a partes opositoras, y al no proveer nueva vista pública para la consideración y oportunidad de refutación de ésta.

## V

Roseland, Inc. plantea que la Junta no tuvo ante sí hechos suficientes para considerar favorablemente la consulta y que erró al no hacer determinaciones de hechos y conclusiones de derecho.

Entendemos relevantes a ese planteamiento algunas de las determinaciones incluidas en la resolución. Podemos afirmar que la determinación de la resolución recurrida de que se dio cumplimiento al inciso (c) de la sección 97.03 del Reglamento de Zonificación en cuanto al impacto en el tránsito no está amparada en el récord. La contención del proponente de que en los estudios de conversión de la avenida Piñero en expreso y sobre el impacto ambiental de ese proyecto se tomaron en cuenta los proyectos futuros, no está incluida en la resolución recurrida, a pesar de que la Junta somete esa posición como fundamento .en su escrito de oposición ante este Tribunal. Como antes señalado, no se nos ha informado que esos estudios de tránsito y ambientales forman parte del expediente de este caso, que estuvieron accesibles a las partes y que fueron tomados en cuenta al emitir la resolución recurrida.

En cuanto al factor sobre el ofrecimiento comercial, lo que queda contemplado en el inciso (5) de la sección 97.03 del Reglamento de Zonificación, la Junta determinó en la resolución recurrida que los criterios a que se refiere ese inciso son aplicables a proyectos que combinen usos comerciales y residenciales, lo cual señaló, no es el caso que nos ocupa. La lectura total del inciso (5) no sustenta esa determinación. Si bien es cierto que la primera oración del inciso (5), *supra*, se refiere a proyectos mixtos, la segunda oración se refiere a proyectos de usos comerciales para ventas al detal, como el autorizado en éste, cuando se requiere información para determinar el efecto de la aprobación en el ofrecimiento del área de mercado. ■ La Junta no hizo determinación, a base del expediente, respecto al criterio antes señalado.

Finalmente, la Junta no consideró en la resolución, si mediaron cambios sustanciales en las condiciones del área o sector donde se solicita la consulta, en comparación con las existentes cuando se denegaron las solicitudes de proyectos anteriores en el mismo predio. Cfr. Sección 4.06 del Reglamento de Zonificación; *Montalvo v. Lorié*, ___ D.P.R. ___ (1998), **98 J.T.S. 25**, pág. 654. El asunto fue planteado ante la Junta por los opositores.

Aunque la Junta no hizo evaluaciones de los hechos en sus determinaciones, sino que hizo referencia a comunicaciones de diversas agencias, lo incluido en éstas no presenta controversias, excepto en los renglones previamente señalados. Por tanto, no cabe afirmar que hay carencia de determinaciones de hechos, sino que varias de éstas, como hemos indicado, son incompletas, no están debidamente sustentadas, o se omitieron. En cuanto a las conclusiones de derecho, las incorporadas en la resolución señalan las disposiciones reglamentarias aplicables a la consulta de ubicación.

## VI

En virtud de todo lo anterior, se expiden los recursos, se revoca la resolución recurrida y se devuelve el caso a la Junta de Planificación para que celebre vista en la que de oportunidad a los recurrentes y a las partes opositoras que participaron en el proceso a evaluar y refutar los estudios considerados por la Junta con

posterioridad a la vista del 14 de marzo de 1998. En la resolución que emita la Junta deberá hacer determinaciones de hechos respecto a la evidencia que consideró con posterioridad a dicha vista, y sobre los aspectos que omitió en la resolución recurrida, conforme lo expuesto en esta sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 115

**1.** La Asociación de Residentes de Hato Rey Oeste, la Asociación de Residentes de Baldrich, Inc. y el Condominio Parque de las Fuentes se unieron en este foro a los plantamientos de Roseland, Inc., como interventores o participantes en el proceso administrativo.

**2.** En su moción de 1ro. de marzo de 1999 la Junta nos indica que autorizó el uso del terreno, pero no ha autorizado un cambio de zonificación.

**3.** En la comunicación del proponente de 15 de mayo, hay anotación de envío de copias a varios abogados, incluyendo a la abogada de Roseland, Inc., pero no consta notificación al Municipio de San Juan, tal como requirió la Junta mediante resolución.

**4.** En su informe, la oficial examinadora consideró el inciso (5) y acogió lo expuesto por el proponente en su memorial explicativo al indicar: *"El uso comercial propuesto es uno que por su localización, accesibilidad de infraestructura disponible proveerá servicios que cumplirán adecuadamente las necesidades del sector."* (Anejo 19 del recurso Núm. KLRA-98-00640, págs. 16 y 17).

La Junta debe determinar si ese señalamiento es suficiente para dar cumplimiento al mencionado factor. Como factor económico, la resolución sólo incluye en las determinaciones de hechos que se espera que el proyecto genere 100 empleos indirectos y que tendrá inversión de 10 millones de dólares.